IN THE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **TANYA LYONS,** | |
| Plaintiff, | |
| v. | CA No. 4:17-CV-01455 |
| **KATY ISD,** | |
| Defendant | JURY DEMANDED |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE JUDGE OF THE COURT:

Plaintiff Tanya Lyons ("Ms. Lyons" or "Plaintiff") files this Response to Defendant's Motion for Summary Judgment based on Katy Independent School District's ("KISD" or "Defendant") Motion for Summary Judgment, and shows as follows:

### I.     NATURE OF THE CASE

Ms. Lyons filed her lawsuit against Defendant for disability and perceived disability discrimination under the American's with Disabilities Act ("ADA"), retaliation under the ADA, and hostile work environment.   This case includes direct evidence of discrimination against Ms. Lyons case, particularly when Ms. Lyons' principal told her he was changing her job duties and position **because of her health.**

### II.     FACTUAL BACKGROUND

Ms. Tanya Lyons was employed with Mayde Creek Junior High School in the Katy Independent School District from 2007 until 2018.[1]   From 2007 until the 2013-2014 school year

---

[1] During her employment, Defendant only counsel Lyons on one occasion prior to 2016 and that incident was self-reported by Lyons. Declaration, Exhibit 1

1

Ms. Lyons coached girls' volleyball, track, and basketball at Mayde Creek Junior High School.[2] In the 2013-2014 school year, she coached volleyball and track.[3]

### A.  Lyons Agreed to Coach Three Sports a Year

At some point in spring 2014, Ms. Lyons was told that all PE teachers would need to coach three sports during the upcoming school year.[4]  Lyons went to speak to David Paz, Principal of Mayde Creek Junior High School, about the decision.[5]  During their conversation, on April 2, 2014, Mr. Paz confirmed that next year all PE coaches would need to coach three sports.[6]  Ms. Lyons told Mr. Paz that she was willing to coach three sports.[7]  Ms. Lyons never told Mr. Paz that she would not coach basketball.[8]

### B.  Lyons was on A 10 Month Contract and Did Not Work Summers

During the school summer break of 2014, when she did not have to work, Ms. Lyons underwent lap band surgery.[9]  Lyons specifically scheduled that surgery during the summer so that she would not have to miss work.[10]  Ms. Lyons told Lauren DeForke she was having the surgery before she had it, and another teacher who had also had the procedure.[11]

On June 25, 2014, Ms. Lyons received a text message saying that the summer sports camps were mandatory, despite the fact that she was not employed with the district in the summers. .[12] Ms. Lyons informed Ms. DeForke and Chris White in a text message that she would not be able

---

[2] Declaration, Exhibit 1
[3] Declaration, Exhibit 1
[4] Declaration, Exhibit 1
[5] Declaration, Exhibit 1
[6] Declaration, Exhibit 1
[7] Declaration, Exhibit 1; David Paz Depo. pp.43-44, 58, 70-71, Exhibit 3
[8] Declaration, Exhibit 1
[9] Declaration, Exhibit 1
[10] Declaration, Exhibit 1
[11] Declaration, Exhibit 1
[12] Declaration, Exhibit 1

to attend the sports camps.  Mr. White told Tanya to contact Mr. Paz so she did.[13]  Ms. Lyons left Mr. Paz a voicemail informing him that she had surgery and that her doctor had given her weight restrictions so she could not attend the camp.[14]

Paz admitted that Lyons was not required or contracted to work during the summer and the time of this mischaracterized "mandatory" training.[15]

### C.  Paz's Overt Perceived Disability Discrimination of Plaintiff

On July 21, 2014, Mr. Paz left a voicemail for Ms. Lyons informing her that she would be transferred from her position and duties as PE teacher to ISS (in school suspension) teacher, a significant change, because of her health.[16]

Ms. Lyons was not happy about the transfer because she did not have a generalist certificate and because she did not want to leave her PE teaching position where she planned a career.[17]  Ms. Lyons wrote Mr. Paz an email addressing her concerns on July 28, 2014.[18]

### D.  The Major Change of Plaintiff's Duties

The ISS teaching position involved working with students who had behavior issues.[19]  Ms. Lyons' new job duties included taking student to lunch, emailing their teachers for assignments, coordinating teachers to come in and help with specific work, and taking the students to breakfast.[20]  Essentially Lyons was  a facilitator.[21]  This job was not as interesting to her as teaching PE.[22]  Ms. Lyons has a degree in kinesiology and she is passionate about physical

---

[13] Declaration, Exhibit 1; Text Message about Summer Camps, Exhibit 5.
[14] Declaration, Exhibit 1
[15] Deposition of Paz pp.52-53, Exhibit 3.
[16] Declaration, Exhibit 1; Transcript of Voicemail, Exhibit 6.
[17] Declaration, Exhibit 1
[18] Declaration, Exhibit 1; July 28, 2014 Email, Exhibit 10.
[19] Declaration, Exhibit 1
[20] Declaration, Exhibit 1
[21] Declaration, Exhibit 1
[22] Declaration, Exhibit 1

education and was on a career path as a PE teacher.[23]  There was no room for advancement or growth for Ms. Lyons in teaching ISS.[24]

On July 30, 2014 Ms. Lyons received a group email from Ms. DeForke that said she would be coaching basketball and track for the 2014-2015 school year despite the fact that Ms. Lyons had agreed to coach three sports.[25]

On August 5, 2014 Ms. Lyons filed a Level One Grievance with Katy Independent School District stating that she was discriminated against by Mr. Paz when he reassigned her to a different job because of her health.[26] She asked HR to be transferred to another school in the District; Defendant denied the request.[27]

On August 12, 2014 Ms. Lyons received a group email from Ms. DeForke removing her from basketball.[28]  Defendant only allowed Ms. Lyons coach track for the 2014-2015 school year.[29]  Ms. Lyons never told Ms. DeForke or Mr. Paz that she would not coach basketball.[30] However, Ms. Lyons sent a sarcastic text to Ms. DeForke saying she could take her out of volleyball, which had already been done according to the July 30, 2014 email.[31]  Defendant reduced Ms. Lyons compensation by $2000 when it adversely removed her from coaching two sports.[32] Each sport paid a stipend. [33]

**E.  The Grievance and Charge of Discrimination**

---

[23] Declaration, Exhibit 1
[24] Declaration, Exhibit 1; David Paz Depo. pp.43-44, 58, 70-71, Exhibit 3
[25]Declaration, Exhibit 1; Lyons Coaching Basketball, Exhibit 7.
[26] Declaration, Exhibit 1; Level One Complaint, Exhibit 13.
[27] Declaration, Exhibit 1
[28] Declaration, Exhibit 1; Lyons Not Coaching Basketball, Exhibit 8.
[29] Declaration, Exhibit 1
[30] Declaration, Exhibit 1
[31] Declaration, Exhibit 1; Lyons Coaching Basketball, Exhibit 7; Sarcastic Text Message, Exhibit 11.
[32] Declaration, Exhibit 1
[33] Declaration, Exhibit 1

On September 12, 2014 Ms. Lyons filed a Level Two Grievance with Katy Independent School district.[34]  This grievance is an appeal of the decision in the Level One Grievance.[35] Defendant denied it.[36]

On November 3, 2014 Ms. Lyons engaged in protected activity (under the Opposition Clause) and filed her first EEOC charge claiming disability and perceived disability discrimination and retaliation.[37]

### F.  Lyons Suffered PSTD, Anxiety, and Stress Because of Defendant

Starting in February 2015, Ms. Lyons was forced to go out on intermittent leave several times during the year because of Plaintiff's actions.  She went on leave because the loss of her PE position and harassment by Mayde Creek Junior High employees caused her anxiety, stress, and PTSD.

### G.  Defendant Continued to Retaliate

On August 8, 2015, Ms. Lyons received a group email informing her that she would not be coaching track for the 2015-2016 school year, but that she would be coaching tennis instead.[38]

Ms. Lyons was deeply upset about being removed from track.[39]  She held two school records *at that school* in track for shot put and discus from when she was a student at Mayde Creek Junior High school.[40]  While coaching track, her athletes received the highest points in shot put and discus.[41]  Ms. Lyons also had several athletes win second and third place in the District

---

[34] Declaration, Exhibit 1; Level Two Grievance, Exhibit 4.
[35] Declaration, Exhibit 1
[36] Declaration, Exhibit 1
[37] Declaration, Exhibit 1; EEOC Charge, Exhibit 15.
[38] Declaration, Exhibit 1; Tennis Email, Exhibit 19.
[39] Declaration, Exhibit 1
[40] Declaration, Exhibit 1
[41] Declaration, Exhibit 1

competition.[42]   Ms. Lyons had **no** experience coaching tennis, and the tennis coach that took over her track position did not have experience coaching track.[43]

Beginning in the 2016-2017 school year, Defendant took away all off Ms. Lyons' academic core duty teachers from the ISS classroom.[44]   Lyons was not asked to give the ISS presentation to the whole staff for the 2015-2016 and 2016-2017 school years.[45]

On June 3, 2016 Ms. Lyons was placed on FMLA again because of Defendant's actions and returned in August 2016.[46]   Ms. Lyons was out on FMLA in September 2016 and returned in April 2017.[47]

**H. Defendant Continued to Retaliate**

When Ms. Lyons returned to work in April 2017 and Defendant  wrote here up for reporting an event that she found threatening and that caused her to fear for her safety.[48]   Even though another employee Ms. Sandberg substantiated Plaintiff's  claim, Mr. Paz wrote Ms. Lyons up for fabricating the story.[49]   The write up was dated September 28, 2016, after she had already gone on leave.[50] Ms. Lyons tried to file a grievance about the write up; Defendant denied her.[51]

Ms. Lyons again went on leave during the summer of 2017 and she remand on leave until she was terminated on February 10, 2018 for being unable to return to work.[52]   Ms. Lyons doctors

---

[42] Declaration, Exhibit 1
[43] Declaration, Exhibit 1
[44] Declaration, Exhibit 1
[45] Declaration, Exhibit 1
[46] Declaration, Exhibit 1
[47] Declaration, Exhibit 1
[48] Declaration, Exhibit 1
[49] Declaration, Exhibit 1
[50] Declaration, Exhibit 1
[51] Declaration, Exhibit 1
[52] Declaration, Exhibit 1; Termination Letter, Exhibit 22.

would not clear her return for work after what Defendant did to her and her subsequent medical condition caused by or exacerbated by Defendant's actions.[53]

While working for Mayde Creek Junior High, Ms. Lyons experienced several incidents of harassment including but not limited to received group texts when she had asked not to, having her emails passed around to other teachers, being threatened when she needed to take off for doctors appoints, and several rude comments.[54]   In an effort to distance herself from the harassment, Ms. Lyons asked HR to transfer her, and Defendant denied her attempts to stop the retaliation and harassment on multiple occasions.[55] (Melissa, citation)

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56 (a); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). The movant, "bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf Inc., v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp., v. Catrett,*  477 U.S 317, 322-25 (1986).

Under Federal Rule of Civil Procedure 56(a), the moving party bears the initial burden of "informing the district court of the basis for the motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue for trial." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Leonard v. Dixie Well Serv. & Supply, Inc.,* 828 F.2d 291 (5th Cir. 1987).  If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or

---

[53] Declaration, Exhibit 1
[54] Declaration, Exhibit 1 (See attached Exhibits); Tanya Lyons Depo. pp.167-168, Exhibit 2.
[55] Declaration, Exhibit 1 (see attached Exhibits)

designate specific facts showing the existence of a genuine issue for trial. *Alan v. Rapides Parish Sch. Bd.,* 204 F.3d 619, 621 (5th Cir. 2000) (internal quotations and citation omitted).

## IV.    ARGUMENTS AND AUTHORITIES

### A.  Plaintiff Established a Prima Facie Case for ADA Disability Discrimination and Perceived Disability Discrimination

Defendant reassigned Ms. Lyons, significantly changed her duties and stripped of several of her coaching duties and stipend once David Paz was informed that she had surgery and that she was unable to attend a summer basketball camp that occurred during a time she was not contracted, paid or even allowed to work.  Mr. Paz wrongfully discriminated against Ms. Lyons on the basis of her disability or perceived disability.  Mr. Paz went so far as to tell Plaintiff in a voicemail that he was transferring her *because of her health.* Luckily, Plaintiff (and now Defendant) has that voicemail.

To establish a prima facie case of discrimination based on a disability under the ADA, the plaintiff must show that (1) she suffers from a disability or is regarded as disabled; (2) she is qualified for the job despite the disability; (3) she was subjected to an adverse employment action due to her disability; and (4) she was replaced by a non-disabled person or treated less favorably than nondisabled employees. *Bennett v. Dallas Indep. Sch. Dist.*, 936 F. Supp. 2d 767, 776 (N.D. Tex. 2013).  A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2).  To be "regarded as" disabled under the ADA, 42 U.S.C. § 12101, a plaintiff must (1) ha[ve] an impairment which is not substantially limiting but which the employer perceives as substantially limiting ...; (2) ha[ve] an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) ha[ve] no impairment at all but is regarded by the

employer as having a substantially limiting impairment.  *Williamson v. Am. Nat. Ins. Co.*, 695 F. Supp. 2d 431, 449 (S.D. Tex. 2010).

Defendant states in it's Motion for Summary Judgment that Ms. Lyons cannot show that she was disabled because obesity is not a disability under the ADA.  *See Defendant's Motion for Summary Judgment pp. 10-16*.  To the contrary, Ms. Lyons never claimed that she was disabled because of obesity.  Lyons asserted in her Original Complaint that it was knowledge of her "procedure" which caused Mr. Paz to perceive her as disabled.  *See Plaintiff's Original Complaint p.3.*  In the interrogatory response that Defendant uses to cite it's rationale for the argument it makes that obesity is the disability asserted, it clearly does not say that obesity is the disability at issue.[56]  *See Defendant's Motion for Summary Judgment p. 11.*  In fact, during Ms. Lyons deposition, she does not once state that her disability or the disability perceived by Defendant was that she was obese, rather she only discusses her surgery.[57]  Therefore, the Court should deny Defendant's motion for summary judgment on Ms. Lyons' ADA disability and perceived disability claim because Defendant has not made any arguments that Ms. Lyons was not disabled or perceived as disabled because of her surgery. Defendant simply makes up a health issue regarding Plaintiff without cite, support or evidence.

### 1. The Direct Evidence

Defendant seems to argue that no fact issue exists as to whether Ms. Lyons was disabled or perceived as disabled due to her surgery. Defendant may be right. Mr. Paz took away that fact issue when he blatantly, directly and overtly said (and saved for perpetuity) that he was significantly altering Plaintiff's duties and moving her position **because of her health.** This is

---

[56] Interrogatory No 6: In paragraph 4.2 of your Complaint, you state that you has an "outpatient surgical procedure" in the summary of 2014.  Please identify and describe the medical condition that required this procedure, and describe the surgery or procedure that occurred. (see Defendant's exhibit C)
Answer: Obesity and High Cholesterol; Gastric Lap Band
[57] Tanya Lyons Deposition, ("Depo.") pp. 59-62, Exhibit 2

direct evidence of discriminatory animus by Defendant of Plaintiff's disability or perceived disability.[58]

   According to Ms. Lyons, after her surgery she was unable to lift a certain amount of weight which caused her to miss a basketball camp.[59]   The Fifth Circuit stated that the ADA includes 'lifting' in its list of major life activities.   *Weems v. Dallas Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 728 (N.D. Tex. 2017).   Ms. Lyons informed Mr. Paz via voicemail or text that she had weight restrictions and that she had had surgery on June 25, 2014.[60]   It is important to note that Ms. Lyons was not under contract during this time until almost two months later.

   The direct evidence: by Mr. Paz clearly stating that he perceived that Ms. Lyons was disabled.   On July 21, 2014, Mr. Paz left Ms. Lyons the following voicemail:

>    "Tayna, this is David Paz.   I wanted to talk to you, there was a resignation today in ISS, and I know you've been having some health concerns, and so with that, and knowing that you have ISS… um, you have ISS experience, I really like the idea of having a coach in ISS, um, helping to actually make it an effective deterrent, and then, with our classroom management.
>
>    So what I'm going to do is, I'm going to be changing your, um changing your assignment to be the ISS teacher.   Um, I'm also doing to, this opens up the, um, opens up that position in PE, and what I can do is find somebody for basketball, so that you don't have to do the basketball.   I know that's something you weren't looking forward to.   So this hopefully will be good news as well, taking you out of that basketball position.
>
>    Um, if you have any questions, give me a call.   I will be off campus probably about an hour, for the rest of the day I'll be at the ESC.   I will be here tomorrow, if you want to give me a call, or shoot me an email, or stop by.   And also, let me know how everything is going.   I know you had your procedure, make sure that

---

[58] Where a plaintiff offers remarks as **direct evidence**, we apply a four-part test to determine whether they are sufficient to overcome summary judgment. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (2016); (citing *Reed v. Neopost USA, Inc.,* 701 F.3d 434, 441 (5th Cir.2012) and (*Brown v. CSC Logic, Inc.,* 82 F.3d 651, 655 (5th Cir.1996)). To qualify as **direct evidence** of **discrimination**, workplace comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' " *Id.* (quoting *Auguster v. Vermilion Par. Sch. Bd.,*249 F.3d 400, 405 (5th Cir.2001) (alterations in original) (quoting *Krystek v. Univ. of S. Miss.,* 164 F.3d 251, 256 (5th Cir.1999)).  Here, the protected class is disabled or perceived as disabled, Mr. Paz transferred Ms. Lyons less than a month after she informed him of her surgery, Mr. Paz is principal of the school, and he says in the voicemail that his actions are because of her health.
[59] Tanya Lyons Depo. pp. 58-59, 69, Exhibit 2; Level Two Grievance, Exhibit 4.
[60] Tanya Lyons Depo. pp. 58-59, 69, Exhibit 2; Level Two Grievance, Exhibit 4; Text Message about Summer Camp, Exhibit 5.

everything is good.  Make sure that you get all the support you need for the beginning of the year.  Alright?  Have a good day.[61]

A person is regarded as disabled if they ha[ve] an impairment which is not substantially limiting but which the employer perceives as substantially limiting. *Williamson,* 695 F. Supp. At 449.  By saying, "I know you've been having some health concerns, <u>and so with that</u>, and knowing that you have ISS…" Mr. Paz blatantly stated that he was moving her out of her position into a different one because of her surgery.  This statement is indeed direct evidence and leaves no question as to motive.

### *2.  Qualified to do her job*

Ms. Lyons was qualified for the job of P.E. teacher and coach.  She has a degree in kinesiology and was team manager of her college volleyball team.[62]  As mentioned above, after Mr. Paz found out about Ms. Lyons surgery, he transferred her from PE teacher to ISS teacher while she was on summer break and not even working.[63]  In addition to transferring her, he also stripped her of her volleyball and basketball coaching duties which paid about a $2000 stipend each.[64]  Mr. Paz took away her coaching duties, with its stipend on July 21, 2014, the same day as the voicemail.[65]  Defendant took away her basketball coaching position on August 12, 2014.[66]

### *3.  The Significant Difference in Job Duties*

The ISS teaching position involved working with students who had behavior issues.[67]  Ms. Lyons new job duties included taking students to lunch, emailing their teachers for assignments, coordinating with teachers to come in and help with specific work, and taking the students to

---

[61] Transcript of July 2014 voicemail, Exhibit 6.
[62] Tanya Lyons Depo. pp.8-9, Exhibit 2
[63] Tanya Lyons Depo. pp.55-56, Exhibit 2
[64] Tanya Lyons Depo. pp. 48, Exhibit 2; David Paz Depo. pp.70-71, Exhibit 3; Lyons Coaching Basketball, Exhibit 7; Lyons Not Coaching Basketball Message, Exhibit 8.
[65] Recommendation Request, Exhibit 9.
[66] Lyons Coaching Basketball, Exhibit 7; Lyons Not Coaching Basketball Message, Exhibit 8.
[67] Declaration, Exhibit 1

breakfast.[68]  She did not enter grades or have grades to enter in this position because she didn't grade anything.[69]  She did not create lessons plans in this position.[70]  Ms. Lyons did not have course specific training.[71]  Essentially she acted as a facilitator.[72]  This job was not as interesting to her as teaching PE.[73]  Ms. Lyons has a degree in kinesiology and she is passionate about physical education.[74]  There was no room for advancement or growth in teaching ISS.[75]

As a PE teacher Ms. Lyons was responsible for 150 students throughout the day.[76]  She was responsible for giving the kids grades, entering them in the computer, creating progress reports with comments, issuing grades for report cards, making phone calls to the child's parents (good and bad) and putting them in the call log, and making lesson plans.[77]  Ms. Lyons was responsible for taking attendance and entering it in the computer, checking the locker room for clothes and other things that could be left out.[78]  She even did laundry.[79]  Her lesson plans revolved around two week units of different sports, which she had to be familiar with.[80]  The lesson plans included classes on soccer, tennis, volleyball, badminton, golf, running, softball, basketball, bowling, pickle ball, newcom, and the presidential fitness test/fitness gram.[81]  She was also required to take specific continuing education courses as a PE teacher.[82]

Traditionally, adverse employment actions include decisions affecting a significant change in employment status, such as hiring, firing, granting leave, demoting or failing to promote,

---

[68] Declaration, Exhibit 1
[69] Declaration, Exhibit 1
[70] Declaration, Exhibit 1
[71] Declaration, Exhibit 1
[72] Declaration, Exhibit 1
[73] Declaration, Exhibit 1
[74] Declaration, Exhibit 1
[75] Declaration, Exhibit 1
[76] Declaration, Exhibit 1
[77] Declaration, Exhibit 1
[78] Declaration, Exhibit 1
[79] Declaration, Exhibit 1
[80] Declaration, Exhibit 1
[81] Declaration, Exhibit 1
[82] Declaration, Exhibit 1

assignment with significantly different responsibilities, or decisions changing benefits or compensation. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 118 S.Ct. 2257, 2268, 141 L.Ed.2d 633 (1998).  Thus, "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Alvarado v. Texas Rangers*, 492 F.3d 605, 613–14 (5th Cir. 2007).  Dr. Paz clearly stated that Ms. Lyons was transferred because of her disability.[83]  Ms. Lyons loss of salary[84] and transfer to a job with significantly different duties that she does not have a degree in, that does not involve physical education, that involves working with children with behavior issues, that had completely different job duties, and that has no room for advancement, which creates a fact issue that she suffered an adverse employment action because of her disability or perceived disability.[85]

### 4. *The non-disabled, non-qualified and non-certified Replacement*

Lastly, Ms. Lyons was replaced by Sarah Lindsey/Parich.[86] Ms. Parich was not disabled nor did Mr. Paz perceive her as disabled.[87]

Defendant posted the PE position from which it removed Ms. Lyons. Ms. Parich was also a long term sub and was permitted to coach 3 sports against company policy that subs could not coach sports.[88]  Substitutes are not required to coach three sports because substitutes are not allowed to coach sports.[89]  Ms. Parich was not qualified to teach PE nor was she certified.[90]  Mr.

---

[83] Transcript of July 2014 voicemail, Exhibit 6.
[84] As a result of losing two coaching positions. Tanya Lyons Depo. pp. 48, Exhibit 2; David Paz Depo. pp.70-71, Exhibit 3; Lyons Coaching Basketball, Exhibit 7; Lyons Not Coaching Basketball Message, Exhibit 8.
[85] Declaration, Exhibit 1; David Paz Depo. pp. 30, 68-69, Exhibit 3
[86] David Paz Depo. p. 45, Exhibit 3
[87] David Paz Depo. p. 103, Exhibit 3
[88] David Paz Depo. pp.79-80 and 87, Exhibit 3
[89] David Paz Depo. p.87, Exhibit 3
[90] David Paz Depo. pp.65, 84, Exhibit 3

Paz allowed Ms. Parich to coach and gave Ms. Lyons coaching duties away.[91]   Based on the above facts, Ms. Lyons has presented enough facts to create a genuine issue of material fact as to whether she was discriminated against based on her disability or perceived disability.

### 5.   *A fact issue exists as to whether Mr. Paz's reasons for transferring Ms. Lyons and removing her coaching duties are not legitimate; they are discriminatory on their face*

Although Defendant does not state a legitimate non-discriminatory reason for transferring Ms. Lyons and removing a majority of her coaching duties in its Motion for Summary Judgement, Ms. Lyons presents the following facts to show that the reasons provided in Mr. Paz's deposition are false.

Where a plaintiff offers remarks as direct evidence, we apply a four-part test to determine whether they are sufficient to overcome summary judgment. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (2016); (citing *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir.2012) and (Brown v. CSC Logic, Inc., 82 F.3d 651, 655 (5th Cir.1996)). To qualify as direct evidence of discrimination, workplace comments "must be '1) related [to the protected class of persons of which the plaintiff is a member]; 2) proximate in time to the terminations; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue.' " *Id.* (quoting *Auguster v. Vermilion Par. Sch. Bd.*,249 F.3d 400, 405 (5th Cir.2001) (alterations in original) (quoting *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir.1999)).   Here, the protected class is disabled or perceived as disabled, Mr. Paz transferred Ms. Lyons and removed her coaching duties less than a month after she informed him of her surgery, Mr. Paz is principal of the school, and he says in the voicemail that his actions are because of her health which is all cited above.

---

[91] David Paz Depo. p.88, Exhibit 3

However, in an abundance of caution, Ms. Lyons presents the following arguments if the Court finds that this case is not a direct evidence case.

Cases brought under the ADA apply the *McDonnell Douglas*, Title VII burden-shifting analysis. *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 396 (5th Cir.1995) (*citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973)). Once the plaintiff makes his *prima facie* showing, the burden then shifts to the defendant-employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). Once the employer articulates such a reason, the burden then shifts back upon the plaintiff to establish by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination. *Id*.

Based on Mr. Paz's testimony, he wanted a coach in ISS and was told that Ms. Lyons had previous experience in the position, which led him to believe she would be a good fit for the job.[92] However, based on his own testimony, he could have easily hired someone to fill in the ISS position rather than shuffle everyone around.[93] And in this shuffle, Mr. Paz replaced Ms. Lyons with someone who was not qualified or certified for her position.[94] In fact, Mr. Paz stated that Ms. Parich did not even qualify for to be interviewed for the job.[95] In fact, there isn't even an ISS teacher this year.[96]

Ms. Lyons agreed to coach three sports at the beginning of the year and Defendant has wholly failed to evidence that she would not coach three sports.[97] Mr. Paz claims that Ms. Lyons told Ms. Leforke in a text message that she did not want to coach basketball, however, the text is

---

[92] David Paz Depo. pp. 30, 68-69, Exhibit 3
[93] David Paz Depo. pp. 68-69, Exhibit 3
[94] David Paz Depo. pp. 65, 84, 87, 88, Exhibit 3
[95] David Paz Depo. p. 85, Exhibit 3
[96] David Paz Depo. p. 69, Exhibit 3
[97] Declaration, Exhibit 1; David Paz Depo. pp.43-44, 58, 70-71, Exhibit 3; July 28, 2014 email, Exhibit 10.

written in a sarcastic manner as testified by Ms. Lyons and says that Ms. Leforke can take her off volleyball, not basketball.[98]  Most importantly, at the time of the text message, Defendant has already removed Ms. Lyons from volleyball.[99]  Ms. Lyons never told Mr. Paz or Ms. DeForke that she would not coach basketball.[100]

In the EEOC position statement provided by Defendant, it was made clear that Ms. Lyons had not asked to be removed from coaching volleyball but that Defendant choose to remove her from it when it illegally hired to unqualified, uncertified Ms. Parich which created a "need" for a basketball coach.[101] Defendant also claimed that Ms. Lyons was left with only one sport by her own choice.[102]

To the contrary, in Mr. Paz's deposition he admitted that he removed Ms. Lyons from volleyball prior to hiring Ms. Parich or even knowing that he was going to hire her.[103] Mr. Paz replaced Ms. Lyons with Ms. Parich who was not disabled, who was a long term sub and also not permitted to coach by District rules after taking away her volleyball coaching duties.[104]  The "need" for a basketball coach rather than a volleyball coach was something totally fabricated by Defendant because it removed Ms. Lyons from volleyball and filled the position with someone unqualified and uncertified to coach it.[105]  Mr. Paz did not have to take Ms. Lyons out of her PE position or her coaching positions, but he chose to do it based on her "health concerns." Defendant's actions are fabricated, false, and in contrast to District policy, and a sham.

**B.  Plaintiff Established a Prima Facie Case for ADA Retaliation**

---

[98] Sarcastic Text, Exhibit 11; Tanya Lyons Depo. p.121, Exhibit 2.
[99] Lyons Coaching Basketball, Exhibit 7; Sarcastic Text, Exhibit 11.
[100] Declaration, Exhibit 1
[101] KISD Position Statement, Exhibit 12.
[102] KISD Position Statement, Exhibit 12.
[103] David Paz depo. p.102, Exhibit 3;  Recommendation Request, Exhibit 9.
[104] David Paz Depo. pp.79-80,  87, 103, Exhibit 3.
[105] David Paz Depo. pp.65, 79-80, 84, 87, 88, 103, Exhibit 3; KISD Position Statement, Exhibit 12.

To establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she engaged in an activity protected by the ADA; (2) she was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 868 (S.D. Tex. 2008). Importantly, "in order to prosecute an ADA retaliation claim, [the] plaintiff need not show that she suffers from an actual disability. Instead, a reasonable, good faith belief [by the plaintiff] that the statute has been violated suffices." *Id*. In evaluating the "causal link" element of a retaliation claim, the Court focuses on three factors: (1) the extent of the employee's disciplinary record; (2) whether the employer followed its policies and procedures; and (3) the temporal relationship between the protected action and adverse employment action. *Id*. at 869.

Plaintiff engaged in a protected activity on August 5, 2014 when she complained through a level one grievance (and subsequently through her EEOC Charge of Discrimination) that she was being discriminated against because of a medical disability.[106]  As mentioned previously by Defendant, a "protected activity" under the ADA includes opposing a discriminatory practice, making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing under the statutes.  42 U.S.C. § 12203; *See Defendant's Motion for Summary Judgement p. 17*. Defendant does not argue in the retaliation section of it's Motion for Summary Judgment that Ms. Lyons did not engage in a protected activity, therefore it is unopposed that she engaged in a protected activity.

Defendant claims in its Motion for Summary Judgment that the retaliation complained of by Ms. Lyons does not rise to the level of "adverse employment action."  *See Defendant's Motion for Summary Judgment pp. 17-24*.  Wrong. Adverse employment actions are defined as decisions

---

[106] Lyons Level One Complaint, Exhibit 13.

affecting a significant change in employment status, such as hiring, firing, granting leave, demoting or failing to promote, <u>assignment with significantly different responsibilities,</u> or <u>decisions changing benefits or compensation.</u> *See Burlington Indus., Inc.,* 524 U.S. at 742 (1998). Thus, "[t]o be equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement." *Alvarado*, 492 F.3d at 613–14.

On August 12, 2014, seven days after she filed a grievance, Mr. Lyons was removed from coaching basketball which caused her to lose $2000 in stipend pay.[107]  Ms. Lyons made it very clear in an email to Mr. Paz on July 28, 2018 that she has never complained about coaching basketball nor is there any evidence that Ms. Lyons refused to coach three sports, basketball included.[108]  In fact, the only evidence presented that Ms. Lyons did not want to coach basketball is from Mr. Paz.[109]  Mr. Paz claims that Ms. Lyons told Ms. DeForke in a text message that she did not want to coach basketball, however, the text is written in a sarcastic manner as testified by Ms. Lyons and says that Ms. DeForke can take her off volleyball, not basketball.[110]

Ms. DeForke was a coordinator and according to Mr. Paz, the coordinators make the decisions on who coaches what, and he supports the decision.[111]  Yet, despite testifying to this, Paz unilaterally removed Ms. Lyons from coaching volleyball.[112]

---

[107] Lyons Coaching Basketball, Exhibit 7; Lyons Not Coaching Basketball Message, Exhibit 8
[108] Declaration, Exhibit 1; July 28, 2014 email, Exhibit 10.
[109] David Paz Depo. pp.70-71, Exhibit 3.
[110] Tanya Lyons Depo. p.121, Exhibit 2; Sarcastic Text, Exhibit 11.
[111] David Paz Depo.  pp.19, 27, 35, 97, Exhibit 3
[112] Recommendation Request, Exhibit 9

Mr. Paz knew that HR had instructed him to give Ms. Lyons two sports when he changed her job title, but after she filed the grievance, he allowed Ms. DeForke to only give her one sport.[113] Ms. Paz's testimony show the illegitimacy of Defendant's actions. [114]

Because Ms. Lyons was removed from her coaching duties and lost a significant amount of pay, she suffered an adverse employment action.  Ms. Lyons was stripped of her basketball coaching duties seven days after filing a grievance.[115] Two months has been ruled as close enough in time to establish causation.  *Hypolite v. City of Houston, Tex.*, 493 F. App'x 597 (5th Cir. 2012).  Further, at the time of the removal, Ms. Lyons had a decent disciplinary record with only one infraction in seven years which she reported and good performance reviews.[116] Therefore, a fact issue exists whether there is a causal connection between the protected activity and the adverse employment action because the event occurred seven days apart, Ms. Lyons did not have a disciplinary record that warranted this action, and because one of the actors that could have removed her was aware of the grievance.[117]

The next adverse employment action that Ms. Lyons complains of is that she was removed from coaching track to coaching tennis.[118]  Ms. Lyons was deeply upset by being removed from track.[119]  Lyons held two school records of her own at that  from when she was a student at Mayde Creek Junior High school.[120]  While coaching track, her athletes received the highest points in shot put and discus.[121]  Ms. Lyons also had several athletes win second and third place

---

[113] David Paz Depo. pp.77-78, Exhibit B
[114] Mr. Paz was aware of the grievance because it was made against him.  Level One Complaint, Exhibit 13.
[115] Lyons Not Coaching Basketball, Exhibit 8; Level One Complaint, Exhibit 13
[116] Declaration, Exhibit 1; Performance Reviews, Exhibit 18.
[117] Level One Complaint, Exhibit 13.
[118] Tanya Lyons Depo. pp.127-128, Exhibit 2.
[119] Declaration, Exhibit 1
[120] Declaration, Exhibit 1
[121] Declaration, Exhibit 1

in the District competition.[122]  Lyons did not have any experience coaching tennis, and the tennis coach that took over her track position did not have experience coaching track.[123]  Coaching tennis rather than track has significantly different duties as it is an entirely different sport.

The change in coaching duties occurred on August 12, 2015 following the filing of Ms. Lyons Level One Grievance on August 5, 2014,[124] a Level Two Grievance on September 12, 2014,[125] an EEOC charge on November 3, 2014,[126] Defendant's position statement on December 9, 2014,[127] Amended EEOC charge on March 10, 2015,[128] and on April 17, 2015 the Defendant filed its Amended Position Statement.[129]

It is important to note that school ended in May 2015 and August 2015 would have been Defendant's first opportunity to retaliate against Ms. Lyons in the new school year for the EEOC amendment.[130]  A fact issue exists whether Defendant retaliated against Ms. Lyons for filing an e EEOC charges by transferring her to the assistant tennis coach position.

Defendant continued to retaliate against Ms. Lyons for filing multiple EEOC charges by insinuating she was no longer welcome at the school.  Mr. Paz asked Ms. Lyons during the 2015-2016 school year in the spring semester if she wanted to get out of her dual coaching contract and asked her if she would like to go on the excess list.[131]  Again, a reasonable juror could find that a supervisor's suggestion that Ms. Lyons should leave the school can qualify as constructive discharge or retaliation for filing an EEOC charge.

---

[122] Declaration, Exhibit 1
[123] Declaration, Exhibit 1
[124] Level One Complaint, Exhibit 13; Level One Decision, Exhibit 14.
[125] Level Two Grievance, Exhibit 4.
[126] EEOC Charge, Exhibit 15.
[127] Position Statement, Exhibit 12.
[128] Amended EEOC Charge, Exhibit 15.
[129] Amended Position Statement, Exhibit 17.
[130] Two months has been ruled as close enough in time to establish causation.  *Hypolite.*, 493 F. App'x 597. Excluding the time that Ms. Lyons was out for the summary, a reasonably jury could find causation based on the temporal proximity of the events.
[131] Tanya Lyons Depo. p.153-156, Exhibit 2.

Defendant points to Ms. Lyons' testimony as evidence that the real reason for the adverse employment actions she suffered was actually due to her "deteriorating relationships with the other teachers and coaches.  *See Defendant's Motion for Summary Judgment pp.23-24.*

However, as Defendant knows, Ms. Lyon's speculation or subjective belief is not evidence.[132]

1.  <u>A fact issue exists as to whether transferring Ms. Lyons was pretext for retaliation.</u>

Retaliation claims brought under the ADA are analyzed using the *McDonnell Douglas* burden-shifting test. *Miles-Hickman*, 589 F. Supp. 2d at 868.  First, the plaintiff must establish a *prima facie* case of retaliation. *Id*. If he is successful, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Id*. If the defendant does so, the plaintiff must demonstrate that the proffered reason is pretextual.  *Id*. In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose."  *Id*.

Defendant's illegitimate reason for removing Ms. Lyons from coaching basketball are false. First, it is unclear what Defendant's actual reasons are for taking the actions it did against Ms. Lyons because they are not specifically mentioned in Defendant's motion for summary judgment.  Defendant appears to solely relay on Ms. Lyons speculative, subjective belief testimony for the reasons why it demoted her, transferred her, and asked her twice if she wanted to leave the school, and provides no independent reasons.  *See Defendant's Motion for Summary*

---

[132] This court has repeatedly held that "an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C. v. La. Office of Cmty. Servs.,* 47 F.3d 1438, 1448 (5th Cir.1995).  A party may not defeat a motion for summary judgment by relying on hearsay, conclusions, unsubstantiated assertions, conjecture or subjective beliefs. *Little v. Republic Ref. Co*., 924 F.2d 93, 96 (5th Cir. 1991).

*Judgment pp. 17-24*.   Defendant points to testimony that Ms. Lyons **thought** Ms. DeForke removed her from basketball because she thought she didn't like it.[133]   *See Defendant's Motion for Summary Judgment pp. 19*. This court has repeatedly held that "an employee's subjective belief of discrimination, however genuine, cannot be the basis of judicial relief." *E.E.O.C.*, 47 F.3d at 1448.  A party may not defeat a motion for summary judgment by relying on hearsay, conclusions, unsubstantiated assertions, conjecture or subjective beliefs. *Little*, 924 F.2d at 96. That question was objected to and should not be used as the basis for which Defendant rests its case.[134]  Ms. Lyons did not testify that she would not coach basketball or that she did not like it.[135]  In fact the only evidence of Ms. Lyons discussing basketball with Ms. DeForke states that Ms. DeForke can take her out of volleyball, not basketball.[136]   Therefore, a material fact issue whether the Defendant's actions are retaliatory.

Because Defendant has not and cannot provide any reasons for transferring Ms. Lyons to tennis, and there is no testimony from Mr. Paz about the transfer, Ms.  Lyons guesses that Defendant will allege that she was moved from track to tennis because of conflict with the track coaches.[137]   However, Ms. Lyons has coached several winning track teams for Defendant and it would be a detriment to students to lose such an experienced and accomplished coach and instead be coached by someone without track experience.[138]  Dr. Paz testified that his motto was that everything should be done by putting the students first even if it wasn't best for the adults.[139]

---

[133] Tanya Lyons Depo. pp.115-116, Exhibit 2.
[134] Tanya Lyons Depo. pp. 115-116, Exhibit 2.
[135] Declaration, Exhibit 1; Tanya Lyons Depo. pp. 115-116, Exhibit 2
[136] Tanya Lyons Depo. pp. 115-116, 121, Exhibit 2; Sarcastic Text, Exhibit 11.
[137] Ms. Lyons reported the track coaches failure to properly supervise students and it was forwarded to all the coaches.  Declaration, Exhibit 1 (see Exhibit A in Exhibit 1); David Paz Depo. p.91-92, Exhibit 3. This incident caused issues with the other coaches.
[138] Declaration, Exhibit 1
[139] David Paz Depo. pp.48, 68-69, Exhibit 3.

Yet in this situation, it is clear that he did the exact opposite.[140]  There is an issue of fact whether Ms. Lyons was removed from her coaching duties because of the EEOC charges she filed against the school.

Following her transfer from track coach to tennis coach, Mr. Paz started asking Ms. Lyons if she wanted to get out of her dual teaching contract or go on the excess list.[141]  The timing of the events suggests that Mr. Paz believed that the change to tennis would cause Ms. Lyons to want to leave the school or end her contract.  Ms. Lyons had attempted to transfer several times but was denied by HR.  A reasonable jury could find that transferring Ms. Lyons to tennis, refusing to let her transfer, but asking her if she would like to terminate her contract or go on the excess list[142] is not only evidence that the school was trying to get her to quit, but that it was acting in this manner because of the charges she filed against it.

### C.  Hostile Work Environment

In order to show a prima facie case for hostile work environment under the ADA, Ms. Lyon must provide evidence: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.  *Flowers v. S. Reg'l Physician Servs. Inc.*, 247 F.3d 229, 235–36

---

[140] Ms. DeForke was a coordinator and according to Mr. Paz the coordinators make the decisions on who coaches what and he supports the decision.  David Paz Depo.  pp.19, 27, 35, 97, Exhibit 3.  Yet there is a fact issue whether Dr. Paz makes the decision or has more say than he claims because he took Ms. Lyons out of volleyball.  Recommendation Request, Exhibit 9.

[141] Tanya Lyons Depo. pp. 153-158, Exhibit 2

[142] The excess list is arguably worse than the transfer list.  The excess list is a list of teachers that can be assigned to any school in the district for any job you are qualified for.  Tanya Lyons Depo. p.157, Exhibit 2.  The transfer list is a list of teachers looking for jobs in the district but who apply the jobs they want rather than being randomly assigned.  Tanya Lyons Depo. p.156, Exhibit 2.

(5th Cir. 2001).  Moreover, the disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."  *Id.*

Defendant's only argument for this section is that Ms. Lyons cannot provide evidence that the, "…hostility that [she] faced had nothing to do with her disability (or perceive disability), as discussed above, she cannot make out a claim for disability-based hostile environment."  *See Defendant's Motion for Summary Judgment p.24*.  Defendant does not argue that Ms. Lyons cannot meet any of the other three elements of the cause of action.  Therefore, Ms. Lyons presents the following evidence that she can provide evidence of the second and third elements of the cause of action.

Ms. Lyons stated in her interrogatories and confirmed in her deposition that she believes she was place in a hostile work environment because:

> Asking HR multiple time to be transferred and being denied.  Being asked to tell on teachers when they did not turn in work for their students, when the [sic] Coaches transferring to other schools and stating to others because they did not want to be sued  by me;  Matthew Tollison to Erin Kuni in the hallway out loud for others to hear, did not come to see their students.  Teachers being upset with being told on and verbalizing it to me.  Coaches not even saying hi and being professional; ignoring me, avoiding me.[143]

Ms. Lyons went on to say that:
> …District placed in me in a hostile environment was when Matthew Tollison forwarded my e-mail and Randle forwarded it and wrote on it and forwarded it, again.  And then, Matthew yelling out in the hallway to my paraprofessional, "I'm getting the heck out of this place, because I'm not going to be sued by her"; and he transferred away.  Teachers coming up us and asking why are we being told on.  As I said, the other coaches, me saying "Hi" to them, them not even saying "Hi," total ignoring and avoiding me.[144]

Defendant states in it's Motion for Summary Judgement that, "…[Ms.] Lyons could not explain how any of the acts, unpleasant or 'hostile' as they may have been, had anything to do

---

[143] Tanya Lyons Depo. p.167, Exhibit 2.
[144] Please note that Ms. Lyons counsel objected to this response on the ground that it called for a legal conclusion or speculation.  Tanya Lyons Depo. pp.167-168, Exhibit 2.

with her disability, perceived disability, or complaint about discrimination." *See Defendant's Motion for Summary Judgment p.24.* However, it is important to look at the entire scope of events when deciding whether Ms. Lyons experienced a hostile work environment, rather than asking if each individual event was related to her disability.

It is important to remember that all of the events complained about in this lawsuit started when Mr. Paz called Ms. Lyons and told her that he was removing her PE position and gave an unqualified employee Ms. Lyons volleyball coaching position based, in his words, on her "health concerns."[145] Prior to that event, Ms. Lyons had received good performance reviews from her Defendant and did not have any issues at the school.[146] After the July 21, 2014 voicemail, Ms. Lyons was removed from her job as PE teacher and sent to ISS,[147] removed from coaching both basketball and volleyball,[148] transferred out of track to tennis,[149] was harassed by other employees,[150] threatened by Ms. DeForke for going to the doctor,[151] was asked by her boss if she wanted to terminate her dual contract or be put on the excess list,[152] written up for reporting an incident that made her afraid for her life which was substantiated by another teacher,[153] went on and off intermittent leave and FMLA leave due to stress, anxiety, and PTSD from working for

---

[145] David Paz Depo. pp.79-80 and 87, Exhibit 3; Transcript of Voicemail, Exhibit 6; Recommendation Request, Exhibit 9.
[146] David Paz Depo. pp.89-90, Exhibit 3; Performance Review, Exhibit 15.
[147] Recommendation Request, Exhibit 9.
[148] Recommendation Request, Exhibit 9; Lyons Coaching Basketball, Exhibit 7; Lyons Not Coaching Basketball Message, Exhibit 8.
[149] Email Transferring Lyons to Tennis, Exhibit 19.
[150] Declaration Exhibit 1
[151] Ms. DeForke and other employees ignored Ms. Lyons request to be left alone to heal and had conversations behind her back based on the emails that were being sent to the department involving the coaches not doing their jobs. Declaration, Exhibit 1 (See Exhibit A and B). Further, Ms. DeForke made comments about Ms. Lyons doctor's appointments and insinuated she couldn't take off work for them. Declaration, Exhibit 1 (See Exhibit A). Some coaches made comments about cancelling her sport when she found offensive. Declaration, Exhibit 1 (See Exhibit A).
[152] Declaration, Exhibit 1, Tanya Lyons Depo. p.153-156, Exhibit 2
[153] David Paz Depo. pp. 108-109, 136, Exhibit 3; Memo, Exhibit 21.

Defendant,[154] was not permitted to transfer,[155] and being told that she is not eligible for rehire because of her substantiated complaint.[156]   All of these events stem from one single event, the voicemail informing Ms. Lyons she was being transferred due to "health concerns."[157]   Several teachers were aware that Ms. Lyons was disabled or perceived her as disabled because she told everyone in a group chat she was on FMLA.[158]   Also, Ms. DeForke was aware that Ms. Lyons had had surgery and restrictions prior to her having the surgery in June 2014.[159]   A fact issue exists as to whether the Ms. Lyons was subjected to unwelcome harassment and that the harassment complained of was based on her disability or disabilities.

## V.    CONCLUSION

Direct evidence exists to substantiate Ms. Lyons discrimination claims.   In the alternative, a material issue of fact exists for all of Ms. Lyons claims.   For this reason, the Court should summarily deny Defendant's Motion, request for costs and attorney's fees, and the award Ms. Lyons such other relief for which she is justly entitled.

---

[154] FMLA Sheets, Exhibit 20.
[155] Tanya Lyons Depo. pp.167-168, Exhibit 2.
[156] David Paz pp.108-109, Exhibit 3.
[157] Transcript of Voicemail, Exhibit 6.
[158] Declaration, Exhibit 1 (See Exhibit B).
[159] Declaration, Exhibit 1; Text Message about Summer Camp, Exhibit 5

Respectfully submitted,

*/s/ Ellen Sprovach*
Ellen Sprovach
Texas State Bar ID 24000672
USDC SD/TX No. 22202
ROSENBERG & SPROVACH
3518 Travis, Suite 200
Houston, Texas 77002
(713) 960-8300
(713) 621-6670 (Facsimile)
Attorney-in-Charge for Plaintiff

OF COUNSEL:
ROSENBERG & SPROVACH

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I served a copy of this document by means of electronic transmission, on the 31th day of August 2018.

Christopher B. Gilbert
Thompson & Horton LLP
3200 Southwest Freeway, Suite 200
Houston, Texas 77027
cgilbert@thompsonhorton.com

*/s/ Ellen Sprovach*
Ellen Sprovach