United States District Court
Southern District of Texas
**ENTERED**
March 28, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| TANYA LYONS, | § § § § | |
| Plaintiff, | § § | |
| VS. | § § § | CIVIL ACTION NO. 4:17-CV-1455 |
| KATY INDEPENDENT SCHOOL DISTRICT, | § | |
| Defendant. | | |

## ORDER

Before the Court are Defendant's Motion for Summary Judgment (the "Motion") (Doc. #13), Plaintiff's Response (Doc. #16), and Defendant's Reply (Doc. #17). Having reviewed the parties' arguments and applicable legal authority, the Court grants the Motion.

**I.  Background**

This dispute arises out of alleged disability-based discrimination by a school against its employee. Plaintiff started work at Mayde Creek Junior High School in the Katy Independent School District in 2007. Doc. #16, Ex. 1 at ¶ 2. From 2007 to 2014, at various times, she coached girls volleyball, track, and basketball. *Id.* at ¶ 3.

During the school summer break of 2014, Plaintiff informed Assistant Athletic Coordinator Lauren DeForke that she would be undergoing lap band surgery. *Id.* at ¶ 5. Importantly, Plaintiff had "scheduled the surgery during the [two-month] summer [break] so that [she] would not have to miss work."[1] *Id.* After undergoing the surgery, Plaintiff left School Principal David Paz a

---

[1] No evidence properly before the Court indicates that Plaintiff missed work later that fall. *See* Doc. #1 at ¶¶ 4.2 (Plaintiff "scheduled an outpatient surgical procedure during the summer so that

voicemail, informing him that she would be unable to attend summer sports camps because of her surgery. *Id.* at ¶ 6. Then, on July 21, 2014, Paz left Plaintiff a voicemail:

> Tanya, this is David Paz. I wanted to talk to you, there was a resignation today in [In School Suspension (ISS)], and I know you've been having some health concerns, and so, with that, and knowing that you have ISS . . . um, you have ISS experience, I really like the idea of having a coach in ISS, um, helping to actually make it an effective deterrent, and then, with our classroom management. So what I'm going to do is, I'm going to be changing your, um, changing your assignment to be the ISS teacher. Um, I'm also going to, this opens up the, um, opens up that position in PE, and what I can do is find somebody for basketball, so that you don't have to do the basketball. I know that's something you weren't looking forward to. So this hopefully will be good news as well, taking you out of that basketball position. Um, if you have any questions, give me a call. I will be off campus probably about an hour, for the rest of the day I'll be at the ESC. I will be here tomorrow, if you want to give me a call, or shoot me an email, or stop by. And also, let me know how everything is going. I know you had your procedure, make sure that everything is good. Make sure that you get all the support you need for the beginning of the year. Alright? Have a good day.

Doc. #13, Ex. D.

When Paz reassigned Plaintiff, Plaintiff filed a Level One Grievance with Defendant on August 5, 2014, stating that she was discriminated against by Paz because of the procedure and requesting a transfer to another school. Doc. #16, Ex. 1 at ¶ 11. Human Resources denied Plaintiff's request. *Id.* In August 2014, Plaintiff was informed that she would be coaching track— and not basketball or volleyball. *Id.* at ¶ 12; Doc. #13 at 6–7. In response, Plaintiff filed a Level Two Grievance on September 12, 2014, appealing the Level One decision. Doc. #16, Ex. 1 at ¶ 13. Again, Plaintiff's request was denied. *Id.* Then, on November 3, 2014, Plaintiff filed her first EEOC charge. *Id.* at ¶ 14. Starting in February 2015, Plaintiff "went on [intermittent] leave because the loss of [her] PE position and harassment by Mayde Creek Junior High employees caused [her] anxiety, stress, and PTSD." *Id.* at ¶ 15. Specifically, she was "deeply upset" about

---

it would not impact her work.") and 4.5 ("Plaintiff did not request any accommodations from the outpatient procedure Plaintiff had in the summer nor did she ask for any time to heal.").

2

being informed that she would be coaching tennis instead of track and disappointed that "all of [the] academic core duty teachers [who assisted Plaintiff with specific academic work] were taken away from the ISS classroom" by Defendant. *Id.* at ¶ 16–17.

Ultimately, Plaintiff filed this action, asserting disability-based discrimination, retaliation, and harassment against Defendant. Doc. #1. Now, Defendant moves for summary judgment on all of Plaintiff's claims. Doc. #13.

## II. Legal Standard

### a. Federal Rule of Civil Procedure 56

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "A genuine dispute as to a material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. [Courts must construe] all facts and inferences in the light most favorable to the nonmoving party. But, summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence." *Rogers v. Bromac Title Services, L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014) (internal citations omitted).

"A court will enter summary judgment if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Thomas v. Tregre*, 913 F.3d 458, 461–62 (5th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)) (cleaned up).

### b. Disability-based Discrimination under the Americans with Disabilities Act ("ADA")

To prove disability-based discrimination under the ADA, "the plaintiff must first make a prima facie showing . . . that (a) she is disabled, has a record of having a disability, or is regarded as disabled, (b) she is qualified for her job, (c) she was subjected to an adverse employment action

on account of her disability or the perception of her disability, and (d) she was replaced by or treated less favorably than non-disabled employees." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

A disability means a physical or mental impairment that substantially limits one or more major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment. 42 U.S.C. § 12102(1) (West Supp. 2019). Merely having a temporary impairment—such as a two-month recovery from surgery—is not a disability under the ADA. *Molina v. Transocean Deepwater Inc.*, No. 08-3361, 2010 WL 3123147, at *8 (S.D. Tex. Aug. 3, 2010) (citing *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 195 (2002), *abrogated on other grounds* by ADA Amendments Act of 2008, Pub.L. 110–325, 122 Stat. 3553). "To be disabled requires more: an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. The impairment must have an impact that is permanent or long term. The term 'disability' does not include temporary medical conditions, even if those conditions require extended leaves of absence from work. . . . Impairments while recovering from surgery are not evidence of a permanent disability." *Id.* (internal citations omitted).

### c. Retaliation under the ADA

"To show an unlawful retaliation, a plaintiff must establish a *prima facie* case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. Once the plaintiff has established a *prima facie* case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action. If such a reason is advanced, the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation.

4

Ultimately, the employee must show that but for the protected activity, the adverse employment action would not have occurred." *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999) (internal citations omitted). "A causal link is established when the evidence demonstrates that the employer's decision to [take an adverse employment action] was based in part on knowledge of the employee's protected activity." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 349 (5th Cir. 2019) (internal citation omitted). But temporal proximity alone without any other evidence of a causal link between the protected activity and the adverse action is insufficient. *See id.* (finding that temporal proximity plus defendant's knowledge of protected activity, without more, was insufficient to show causation for an ADA retaliation claim).

### d. Disability-based Hostile Environment

"[T]o succeed on a claim of disability-based harassment, the plaintiff must prove: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Flowers v. S. Reg'l Physician Services Inc.*, 247 F.3d 229, 235–36 (5th Cir. 2001) (internal citation omitted). In determining whether disability-based harassment exists, courts should consider "the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." *Id.*

### III. Analysis

#### a. Plaintiff fails to make a *prima facie* showing of disability-based discrimination under the ADA as a matter of law.

Here, Plaintiff asserts that Defendant discriminated against her under the ADA because of its knowledge—through Principal Paz—of "her 'procedure' which caused Mr. Paz to perceive her as disabled." Doc. #16 at 9; *see also* Doc. #1 at ¶ 4.3 ("Specifically, David Paz stated that he was reassigning Plaintiff because of her 'procedure' and giving her time to heal."); Doc. #13, Ex. D. Furthermore, Plaintiff suggests that the recovery time from the procedure was less than two months, and no evidence properly before the Court indicates otherwise. *See* Doc. #1 at ¶¶ 4.2 and 4.5; Doc. #16, Ex. 1 at ¶ 5. However, as explained above, an eight-week impairment is not a disability under the ADA. *See Molina*, 2010 WL 3123147, at *8 (holding that the impairment must be "permanent or long term" and not a temporary medical condition, such as recovery from surgery). Therefore, Plaintiff's recovery from her procedure was not a disability under the ADA, and Defendant's knowledge of that procedure alone cannot serve as the basis for a disability-based discrimination claim. *See* Doc. #16 at 9; Doc. #1 at ¶ 4.3.

Accordingly, because (1) no material fact issue exists and (2) Plaintiff fails to satisfy the first element of a *prima facie* showing of disability-based discrimination under the ADA as a matter of law, the Court grants the Motion as to Plaintiff's disability-based discrimination claim. *See Rogers*, 755 F.3d at 350.

#### b. Plaintiff fails to present sufficient evidence to establish a *prima facie* showing of unlawful retaliation under the ADA.

Here, Plaintiff alleges that she engaged in protected activity when she filed her grievances and her EEOC charge. Doc. #16 at 17–20. Furthermore, Plaintiff alleges that she was subjected to multiple adverse employment actions following the protected activity. *See, e.g., id.* at 18 (Plaintiff "was removed from coaching basketball which caused her to lose $2000 in stipend pay,"

and Principal "Paz unilaterally removed [Plaintiff] from coaching volleyball") and 19 (Plaintiff "was removed from coaching track to coaching tennis").[2] As the only support for the final element of her ADA retaliation claim (*i.e.*, a causal connection between the protected act and the adverse action), Plaintiff points the Court to the temporal proximity between her alleged protected activity and Defendant's alleged adverse employment actions:

> The change in coaching duties occurred on August 12, 2015 following the filing of Ms. Lyons Level One Grievance on August 5, 2014, a Level Two Grievance on September 12, 2014, an EEOC charge on November 3, 2014, Defendant's position statement on December 9, 2014, Amended EEOC charge on March 10, 2015, and on April 17, 2015 the Defendant filed its Amended Position Statement.

Doc. #16 at 20 (internal citations omitted). However, as explained above, temporal proximity alone without any other evidence of a causal link between the protected activity and the adverse action is insufficient to establish a causal connection. *See Swanson*, 110 F.3d at 1189; *Nall*, 917 F.3d at 349. Therefore, Plaintiff fails to present sufficient evidence to establish a "causal connection" between her alleged protected activity and Defendant's alleged adverse employment actions. *Seaman*, 179 F.3d at 301.

Accordingly, because nonmovant Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case," summary judgment is proper, and the Court grants the Motion as to Plaintiff's retaliation claim. *Thomas*, 913 F.3d at 461–62.

---

[2] Defendant disputes that its actions constitute adverse employment actions under the ADA and gives non-disability-based reasons for its conduct. *See, e.g.*, Doc. #13, Ex. A at 53:2–8 (Plaintiff informed Principal Paz that coaching two sports instead of three would allow her to have a "break" during the "holiday time," which she enjoyed, but that ultimately she would do "three sports" if required) and 114:14–21 (the "only" reason Plaintiff believes she was removed from volleyball "was because of the little bit of butting of heads about . . . [how to] serv[e] [the ball]").

### c. Plaintiff fails to present sufficient evidence establishing a disability-based harassment claim.

Here, Plaintiff alleges that she was subjected to unwelcome harassment at work. *See, e.g.*, Doc. #16 at 24 (colleagues were "ignoring me," "avoiding me," "not even saying hi," or "being professional"). However, Plaintiff fails to present sufficient evidence supporting the third element of her disability-based harassment claim (*i.e.*, that any of the harassment Plaintiff complains of was based on a disability). *See Flowers*, 247 F.3d at 235–36.

Accordingly, because nonmovant Plaintiff "fails to make a showing sufficient to establish the existence of an element essential to [her] case," summary judgment is proper, and the Court grants the Motion. *Thomas*, 913 F.3d at 461–62.

### IV. Conclusion

For the foregoing reasons, the Motion is hereby GRANTED, and Plaintiff's claims are DISMISSED.

It is so ORDERED.

MAR 2 8 2019
Date

The Honorable Alfred H. Bennett
United States District Judge